IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SHAWN FRYE, S05313,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **LATOYA HUGHES,** | ) |
| **JOHN M. BARWICK, III,** | ) |
| **C/O RUSSELL,** | ) |
| **C/O THOMPSON,** | ) |
| **C/O HANEY,** | ) |
| **C/O HOLDER,** | ) |
| **C/O SPILLER,** | ) |
| **C/O NEWTON,** | ) |
| **L.T. JOCKICH,** | ) |
| **C/O WASHBURN,** | ) |
| **C/O MINTON,** | ) |
| **C/O THIES,** | ) |
| **C/O NIPPE,** | ) Case No. 24-cv-2514-DWD |
| **C/O MIER,** | ) |
| **C/O SCOTT,** | ) |
| **C/O SHAFFER,** | ) |
| **C/O SPENCER,** | ) |
| **C/O COLE,** | ) |
| **C/O CORRASCO,** | ) |
| **MRS. DEABORD,** | ) |
| **JANE DOE (mental health),** | ) |
| **C/O MEADOWS,** | ) |
| **SGT. STOWERS,** | ) |
| **JANE DOE 2 (placement),** | ) |
| **JOHN DOE (plumber),** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Shawn Frye, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil

rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that he endured unconstitutional conditions of confinement beginning on August 27, 2024. He seeks monetary compensation.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

On August 27, 2024, Plaintiff and his cellmate were informed that they were being relocated to cell 16, of housing unit 3, gallery/wing D. (Doc. 1 at 6). No reason was provided for the move. As Plaintiff began to transfer his property to the newly assigned cell, he detected a strong foul odor of human waste. Upon closer examination, he noticed that the walls, food slot, floor, water faucet, and other surfaces were coated in feces. He pressed the button for the drinking spout and observed that it was also coated in feces. The toilet contained urine and feces, but when he tried to flush it the contents spilled onto the floor. Plaintiff asked an officer for various cleaning supplies and explained the condition of the cell, but supplies were refused. The officer indicated he would lodge a work order about the toilet.

After attending school for the day, Plaintiff returned to find the cell in the same condition. (Doc. 1 at 7). Plaintiff requested cleaning supplies from "the officer" and was told he could not clean that day but could clean the next day. Plaintiff lacked rags or towels and soap or shampoo because his laundry had been stolen and he could not afford cleaning supplies. He attempted to clean the cell with a sock but quickly stopped when his hands got covered in feces. The foul stench and general disgust caused Plaintiff to vomit. For the next few days, Plaintiff and his cellmate both continuously requested cleaning supplies and for their toilet to be repaired, to no avail. (Doc. 1 at 7). Plaintiff wrote Warden John Barwick a request slip about the filth and toilet problems but got no response. (Doc. 1 at 7).

On September 3, 2024, Plaintiff asked Defendants Thompson and Haney for cleaning supplies and a toilet repair but got nowhere. (Doc. 1 at 8). On September 9, 2024, during commissary, Plaintiff approached Barwick and verbally relayed his situation. He also notified Barwick that for months he had not received cleaning supplies. (Doc. 1 at 8). On September 10, 2024, he wrote "maintenance" about a bug infestation in his cell that resulted in bugs, roaches, ants, and beetles, crawling on him and keeping him awake at night. (doc. 1 at 9). On September 12, 2024, he asked Defendants Holder, Spiller, Newton, Russell, and Jockich for cleaning supplies, he asked for access to clean drinking water, and he informed them he did not want to eat trays passed through his food slot because it was coated in feces. He did not receive any resolution. (Doc. 1 at 9).

On September 23, 2024, he told Defendants Minton and Thies about his situation. (Doc. 1 at 9). On September 26, 2024, he told Defendant Corrasco about his situation. On September 28, 2024, Defendant Nippe did not allow him to get clean drinking water. And on September 29, 2024, Defendant Miler refused cleaning supplies. (Doc. 1 at 9). On September 30, 2024, he informed Defendants Spencer and Cole about his situation on a walk to the healthcare unit, but they refused cleaning supplies. (Doc. 1 at 10). Plaintiff alleges he wrote Defendants Barwick and Hughes between October 3 and 5, 2024, about his situation via certified mail, but he never got responses. (Doc. 1 at 8).

Plaintiff alleges that he told Jane Doe mental health officer about his conditions, and he also told Defendant Mrs. Deabord. (Doc. 1 at 10).

Plaintiff was ultimately forced to live in the filthy cell from August 27, 2024, through October 3, 2024, with no cleaning supplies. (Doc. 1 at 10). He alleges he is a practicing Muslim, and that the conditions of his cell prevented him from properly cleansing himself before prayers, and ultimately prevented him from praying. (Doc. 1 at 10). He further claims the prison was on lockdown almost the entire month of September 2024, which meant he had very little access to drinking water or food. He claims he specifically told officers "such as Thies, Shaffer, Russell, and Holder," about his hunger pains and thirst to no avail. He further alleges he wrote a grievance about these issues, but it was denied by Defendants Barwick and Hughes. (Doc. 1 at 11).

In support of the complaint, Plaintiff submitted his own affidavit and his cellmate's affidavit, both substantiating the allegations in the complaint. He also submitted an affidavit from the individual who allegedly resided in cell 16 before him.

That prior resident averred that his prior cellmate smeared the cell with feces the day before they were moved out of the cell and Plaintiff moved in. (Aff., Doc. 1 at 24). Plaintiff also included a copy an alleged letter to Hughes, and a copy of a work repair slip for a broken toilet that indicated it was repaired on September 9, 2024. (Doc. 1 at 30). Plaintiff attached grievance documentation for all levels of review.

Based on the allegations in the Complaint, the Court designates the following claims:

>**Claim 1:** Eighth Amendment conditions of confinement claim against Defendants Russell, Thompson, Haney, Holder, Spiller, Newton, Jockich, Minton, Thies, Nippe, Miler, Spencer, Cole, and Corrasco for refusing to provide cleaning supplies or other solutions for Plaintiff's cell from August 27, 2024, through October 3, 2024;
>
>**Claim 2:** Eighth Amendment conditions of confinement or deliberate indifference claim against Defendants Barwick and Hughes for failing to investigate or remediate Plaintiff's cell conditions despite detailed notice of the problems he encountered;
>
>**Claim 3:** Eighth Amendment deliberate indifference claim against Defendants Jane Doe (mental health staff) and Mrs. Deabord for failing to do anything about Plaintiff's reported conditions of confinement.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Preliminary Dismissals

Plaintiff named a few individuals in his case caption that he did not mention in the factual allegations—Defendants Washburn, Scott, Schaffer, Meadows, Stowers, Jane Doe 2, and John Doe (plumber). Section 1983 relies on a showing of personal responsibility for discrete harm, so the mere naming of an individual is insufficient to state a claim. *See, Black v. Lane*, 22 F.3d 1395, 1401 n.8 (7th Cir. 1994) (merely naming a defendant without describing his or her personal role is insufficient to state a claim). Thus, Defendants Washburn, Scott, Schaffer, Meadows, Stowers, Jane Doe 2, and John Doe are dismissed without prejudice.

Plaintiff also named at least three individuals in the factual narrative that were not named in the caption—Fornear, Jones, and Wheat. A party must be named in the case caption. Fed. R. Civ. P. 10. Thus, no allegations have been allowed to proceed against these three individuals.

Finally, Plaintiff mentions that he was not able to observe his religion or perform regular prayers because the conditions of his cell did not meet his religious standards for prayer. These allegations certainly may form a basis for a valid religious infringement claim, but Plaintiff does not make it obvious that he told anyone at the prison about this specific issue with his cell. To proceed on a § 1983 claim about this issue under the First Amendment, Plaintiff would need to provide details about who

knew that he had a problem observing his religion in his cell.  The Court acknowledges that claims about the ability to observe an inmate's religion are also frequently presented under the Religions Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a); *Holt v. Hobbs*, 574 U.S. 352 (2015).  However, while the First Amendment affords money damages, RLUIPA only allows for injunctive relief.  *See Sossamon v. Texas*, 563 U.S. 277, 285 (2011).  Because Plaintiff indicates that his cell conditions only lasted until October 3, 2024, it does not appear that he can proceed on a RLUIPA claim for injunctive relief.  Thus, the Court has not designated a religion claim.  If Plaintiff wishes to pursue a First Amendment claim related to his religious exercise, he will need to plead a claim with more detail about the individuals involved in this specific issue.

## DISCUSSION

### Claim 1

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs.  *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994).  Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation.  *Id.*  Many conditions standing alone are not sufficient to give

rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

Here, given the extent and duration of the conditions, the Court will allow Plaintiff to proceed against all defendants named in association with Claim 1.  He alleges he personally informed these individuals of the sanitation issues in his cell on a regular basis but was never offered cleaning supplies and was regularly told he would have to wait until later to clean his cell.  He claims his toilet was broken and filled with human waste, and his attached work order suggests this particular issue persisted for at least two weeks (from August 27, 2024, through at least September 9, 2024).  He also states he would ask for access to clean drinking water, and for food not to be passed through the feces crusted food port, all to no avail.  He alleges with a lockdown that last almost the whole month of September, he suffered from hunger and extreme thirst.  Plaintiff also complains of a bug infestation that involved roaches and other insects crawling on him at night and waking him.  It is less clear who he informed of this issue, but he will still be allowed to proceed at this early juncture. His allegations are sufficient to proceed against all defendants presently associated with these issues.

**Claim 2**

In Claim 2, Plaintiff faults Warden Barwick and IDOC Director Hughes for his conditions.  Generally speaking, an inmate cannot proceed on a § 1983 claim against a high-level administrator such as Hughes or Barwick for their general authority over a facility because they are allowed to delegate the handling of day-to-day issues to other prison staff.  However, in this instance, Plaintiff alleges he wrote request slips, letters,

and grievances to Barwick, and also spoke to him in person.  He further alleges he wrote Hughes via certified mail.  Given these detailed allegations, Plaintiff may proceed on Claim 2 as pled.

**Claim 3**

Plaintiff faults a Jane Doe mental health staff member, and Defendant Mrs. Deabord for their alleged response to complaints about his conditions of confinement. Although it is certainly possible he told these two individuals enough to invoke some sort of response, his complaint is too vague yet to make a plausible claim in this respect. He does not indicate when he told these two about his issues, what he told them, or if they had any opportunity to observe the condition of his cell.  Additionally, as mental health staff, the Court assumes they likely have less control over Plaintiff's daily living conditions and may lack authority to give him cleaning supplies or to order a cell repair.  The Court does not assume there is no scenario where a mental health official may have some responsibility to try to help, but on the very minimum facts asserted, Plaintiff will not be allowed to proceed against these two because his allegations against them are too generic.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendants Russell, Thompson, Haney, Holder, Spiller, Newton, Jockich, Minton, Thies, Nippe, Miler, Spencer, Cole, and Corrasco, and **Claim 2** survives against

Defendants Latoya Hughes and John Barwick. By contrast, **Claim 3** is insufficient to state a claim against Defendants Jane Doe and Mrs. Deabord. All allegations against Defendants Mrs. Deabord, Washburn, Scott, Schaffer, Meadows, Stowers, Jane Doe, Jane Doe 2, and John Doe have also been dismissed as insufficient and the Clerk of Court is **DIRECTED** to **TERMINATE** these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendants Latoya Hughes, John Barwick, Russell, Thompson, Haney, Holder, Spiller, Newton, Jockich, Minton, Thies, Nippe, Miler, Spencer, Cole, and Corrasco: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Dated: December 17, 2024

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.